This opinion is uncorrected and subject to revision before
publication in the New York Reports.
------------------------------------------------------------------

No. 8
Tara N.P. (Anonymous),
          Appellant,
        v.
Western Suffolk Board of
Cooperative Educational Services,
&c.,
          Defendant,
County of Suffolk, et al.,
          Respondents,
et al.,
          Defendants.


          Mary Ellen O'Brien, for appellant.
          Christopher A. Jeffreys, for respondents.


DiFIORE, Chief Judge:

          On this appeal, we are asked to determine whether

Suffolk County can be held liable for damages resulting from the

sexual assault of plaintiff by a worker at a County-owned

facility where plaintiff took adult education classes.  The

- 1 -

worker, defendant Larry Smith, had been referred for a potential position with the lessee of the facility through the County's "welfare to work" program. We hold that where, as here, the County's referral of defendant Smith was within the County's governmental capacity and the County did not assume a special duty to plaintiff, summary judgment was properly granted to the County. We therefore affirm.

Plaintiff Tara N.P. was sexually assaulted while attending classes conducted by Western Suffolk Board of Cooperative Educational Services (BOCES) at a facility operated by North Amityville Community Economic Council (NACEC). NACEC leased the facility where classes were held from Suffolk County for a nominal amount. Additionally, NACEC agreed that the facility would be a work site for the Suffolk Works Employment Program (SWEP), a "welfare to work" program operated by Suffolk County Department of Labor (DOL). NACEC agreed to accept referrals of individuals who did not have criminal records. The DOL referred defendant Smith to NACEC for a potential position as a maintenance worker notwithstanding that it knew Smith was a level three sex offender. NACEC accepted the referral of Smith and months later, while working at NACEC's facility, Smith sexually assaulted plaintiff in an empty classroom.

Plaintiff brought this action to recover damages for personal injuries against Suffolk County, the Suffolk County Department of Social Services, and the DOL (hereinafter,

collectively the County), as well as Smith, NACEC, BOCES, and others. In addition to other relief, the County moved for summary judgment dismissing the complaint insofar as asserted against it on the grounds that it did not owe plaintiff a duty of care and, in any event, was entitled to absolute governmental immunity for discretionary acts. Supreme Court, among other things, denied the County's motion for summary judgment. The Appellate Division, as relevant here, reversed that portion of Supreme Court's order and granted the County's motion for summary judgment on the ground of governmental immunity, holding that the County was acting in a governmental capacity and did not voluntarily assume a special duty to plaintiff. As to plaintiff's argument that the County should be liable because it acted in a proprietary capacity as a landlord, the Appellate Division held that the "essential act complained of . . . that the County negligently referred Smith to NACEC, was a governmental act" and, therefore, plaintiff could not "avoid the attachment of governmental immunity" (131 AD3d 517, 520 [2d Dept 2015]). We granted plaintiff leave to appeal (26 NY3d 914 [2015]).

Plaintiff argues that the County's negligence arose out of its proprietary function as a landlord, and that the County's failure to provide minimal security or a warning to protect those on the premises against foreseeable harm raises issues of fact that preclude summary judgment. In the alternative, plaintiff

argues that, assuming the County is found to have acted in a governmental capacity, the County had a special duty to plaintiff and the act of referring Smith to NACEC was not discretionary.

Under our well-established case law, plaintiff's arguments are without merit. As we have previously explained, "[w]hen a negligence claim is asserted against a municipality, the first issue for a court to decide is whether the municipal entity was engaged in a proprietary function or acted in a governmental capacity at the time the claim arose" (Applewhite v Accuhealth, Inc., 21 NY3d 420, 425 [2013]). "A government entity performs a purely proprietary role when its 'activities essentially substitute for or supplement traditionally private enterprises'" (id., quoting Sebastian v State of New York, 93 NY2d 790, 793 [1999]). In that instance, the government entity is subject to suit under the ordinary rules of negligence. In contrast, acts "'undertaken for the protection and safety of the public pursuant to the general police powers'" are governmental in nature (id., quoting Sebastian, 93 NY2d at 793). "Because this dichotomy is easier to state than to apply in some factual scenarios, the determination categorizing the conduct of a municipality may present a close question" (id.). For that reason, courts must "examine '*the specific act or omission out of which the injury is claimed to have arisen and the capacity in which that act or failure to act occurred*'" (Matter of World Trade Ctr. Bombing Litig., 17 NY3d 428, 447 [2011] [citations

omitted] [emphasis added]).

In this case, the specific act or omission that caused plaintiff's injury was the County's referral of Smith to NACEC through the County's SWEP program, a referral made in spite of NACEC's caveat that it would not accept candidates with a criminal record.  The administration of SWEP by the DOL was quintessentially a governmental role.  The County's conduct in referring Smith was undertaken solely in connection with its administration of that program and was part of the County's fundamental governmental activity.  Therefore, we hold that the County was acting in its governmental capacity when it referred Smith to NACEC.

Plaintiff's claim that the County was acting in its proprietary capacity as a landlord is unpersuasive.  Again, the specific act or omission out of which the injury arose was the County's referral of Smith to NACEC.  This case is distinguishable from Miller v State of New York (62 NY2d 506 [1984]), where we held that the State could be liable for damages in its proprietary capacity as a landlord for failing to keep outer doors locked in a State-operated college dormitory where "there was a reasonably foreseeable likelihood of criminal intrusion into the building" (Miller, 62 NY2d at 508-509).  Here, it is not the County's duty as a landlord to maintain basic security that is implicated; rather, it is the County's failure to properly adhere to the terms that NACEC requested when the

County referred Smith for a potential position at NACEC's work site.

Given that the County was exercising a governmental function in referring Smith to NACEC, "the next inquiry focuses on [whether] the municipality owed a 'special duty' to the injured party" (Applewhite, 21 NY3d at 426; see also Coleson v City of New York, 24 NY3d 476, 481 [2014]).  As we have explained, "[t]he core principle is that to 'sustain liability against a municipality, the duty breached must be more than that owed the public generally'" (Applewhite, 21 NY3d at 426 [citations omitted]).  "[A] special duty can arise in three situations: (1) the plaintiff belonged to a class for whose benefit a statute was enacted; (2) the government entity voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally; or (3) the municipality took positive control of a known and dangerous safety condition" (id.).  The burden of demonstrating such a special duty lies with the plaintiff.  If the "plaintiff fails to meet this burden, the analysis ends and liability may not be imputed to the municipality that acted in a governmental capacity" (id.).

Of the three ways a plaintiff may show the existence of a special duty, situations one and three have no relevance to this case and only the second is at issue here -- namely, whether the County "voluntarily assumed a duty to the plaintiff beyond what was owed to the public generally" (id.).

In <u>Cuffy v City of New York</u> (69 NY2d 255 [1987]), we articulated four elements of this special relationship:

> "(1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of *direct contact* between the municipality's agents and the injured party; and (4) that party's *justifiable reliance* on the municipality's affirmative undertaking" (<u>id.</u> at 260 [emphasis added]).

Notably, all four elements must be present for a special duty to attach (<u>Applewhite</u>, 21 NY3d at 431). Here, the absence of the last two elements -- direct contact and justifiable reliance -- is fatal to plaintiff's claim. There is no view of the evidence that could allow one to conclude that the County voluntarily assumed a special duty to plaintiff. Even if the County promised that it would not refer anyone with a criminal background, that promise would have been made only to NACEC and there is no evidence that plaintiff ever had any knowledge of NACEC's request. In addition, while "the direct contact requirement has not been applied in an overly rigid manner" (<u>Cuffy</u>, 69 NY2d at 261), it is undisputed that there was no direct contact between plaintiff and the County. The County referred Smith to NACEC and plaintiff herself never communicated directly with the County or the DOL. Indeed, "[o]ur cases have accepted direct contact . . . by someone other than the plaintiff as sufficient to create a special relationship only where the

person making the contact was acting on behalf of his or her immediate family" (<u>Laratro v City of New York</u>, 8 NY3d 79, 84 [2006]), which was not the case here.

Likewise, in the absence of direct contact between plaintiff and the County, the "critical" element of justifiable reliance (<u>Cuffy</u>, 69 NY2d at 261), cannot be met.  "[A]t the heart of most of these 'special duty' cases is the unfairness that the courts have perceived in precluding recovery when a municipality's voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced him either to relax his own vigilance or to forego other available avenues of protection" (<u>id.</u>).  Here, however, plaintiff has not demonstrated -- and cannot demonstrate -- such reliance (<u>see</u> <u>Laratro</u>, 8 NY3d at 84).  To find that NACEC's contacts with the County could be imputed to plaintiff to satisfy the direct contact and reliance elements would eviscerate these elements entirely and "would unacceptably dilute the general rule of municipal nonliability" (<u>id.</u>).  Accordingly, plaintiff raises no triable issue of fact as to a special duty running to her from the County.

Because we have determined that there is no triable issue of fact as to the existence of a special duty, we need not address whether the County's referral of Smith was ministerial or discretionary under the "governmental function immunity defense" (<u>see</u> <u>Valdez v City of New York</u>, 18 NY3d 69, 75 [2011]; <u>see</u> <u>also</u>

Haddock v City of New York, 75 NY2d 478 [1990]*).  Indeed,
ministerial actions may be a basis for liability, "but only if
they violate a special duty owed to the plaintiff, apart from any
duty to the public in general" (McLean v City of New York, 12
NY3d 194, 203 [2009]).  Even if we were to assume in plaintiff's
favor that the referral of Smith was ministerial, she cannot
recover against the County in the absence of a special duty.

As we have observed in some prior cases, this
unfortunately is "a case in which a failure by government to do
its job has caused harm" (id. at 197).  Nonetheless, our well-
settled rule of law mandates our holding that the County is
immune from liability to this plaintiff.  Indeed, the public
policy considerations that require our application of the special
duty requirement are underscored when the governmental act at
issue involves beneficial services, such as the "welfare to work"
program involved here.

Accordingly, the order of the Appellate Division,
insofar as appealed from, should be affirmed, with costs.

---

*Notably, we did not address the question of special duty in
Haddock and instead focused exclusively on whether the City's
retention of a participant in the Work Relief Employment Program
as a Parks Department utility worker was ministerial or
discretionary.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Order, insofar as appealed from, affirmed, with costs.  Opinion
by Chief Judge DiFiore.  Judges Rivera, Abdus-Salaam, Stein,
Fahey and Garcia concur.  Judge Wilson took no part.


Decided February 16, 2017